■ BARRY BUCHNER, Respondent, v PINES HOTEL, INC., Appellant. — Appeal from an order of the Supreme Court at Special Term (Williams, J.), entered May 4, 1981 in Sullivan County, which denied defendant's motion for summary judgment after trial of an issue of fact. In this personal injury action arising out of a March 20, 1971 accident, defendant moved for summary judgment sustaining its affirmative defense that workers' compensation benefits were plaintiff's exclusive remedy (Workers' Compensation Law, § 11). This defense was expressly based upon allegations in the answer that defendant and plaintiff's employer, New Pines, Inc., were engaged in a joint venture. An immediate trial of the joint venture issue was directed, and, after such trial, Special Term found that no such joint venture existed. This appeal is from that determination. Section 11 of the Workers' Compensation Law is available as an affirmative defense in work-related civil personal injury actions if the defendant and plaintiff's employer were engaged in a joint venture at the time of the underlying accident (*Felder v Old Falls Sanitation Co.,* 47 AD2d 977, affd 39 NY2d 855; *Fallone v Misericordia Hosp.,* 23 AD2d 222, affd 17 NY2d 648). In determining whether such a joint venture exists for purposes of section 11, courts have applied common-law criteria (see *Felder v Old Falls Sanitation Co., supra,* p 977; *Fallone v Misericordia Hosp., supra,* p 225). The record established that when the accident occurred, plaintiff was formally employed by New Pines, Inc., the operator of a resort hotel. New Pines, Inc., was a wholly owned subsidiary of the defendant corporation, whose corporate stock was entirely owned by Philip and May Schweid, their daughter, and their son-in-law, Jerome Ehrlich. Defendant held title to all the land and buildings and virtually all of the equipment of the resort hotel, including the device plaintiff was operating when he sustained his injuries. Defendant leased all such property to New Pines, Inc., under a written lease which provided a rental fee in a flat cash amount plus a percentage of excess gross profits. Unquestionably, the operation of the business affairs of the two corporations was substantially integrated. Ehrlich acted in the capacity of general manager of both corporations in 1971. The corporations shared common officers and directors and jointly purchased property and business insurance, including workers' compensation coverage. They portrayed their financial affairs in consolidated financial statements and they adjusted their

respective incomes and expenses to minimize taxes for the benefit of defendant's individual shareholders. On the other hand, the record also established that the two corporations elected to file separate, rather than partnership, income tax returns, in which they designated their respective business activities as "resort hotel operator" (in the return of New Pines, Inc.) and "resort hotel rental" (in the return of defendant). Plaintiff and the other employees of the hotel operation were paid out of New Pines, Inc.'s payroll account. In various loan transactions involving outsiders, the lease was offered and accepted as a genuine legal instrument defining the relationship between the two corporations. Plaintiff's accounting expert testified that the corporate records did not indicate a pooling of corporate assets and were inconsistent with the existence of a joint venture. *Matter of Steinbeck v Gerosa* (4 NY2d 302, 317, app dsmd 358 US 39) defines the elements of a joint venture as "a mutual promise or undertaking of the parties to share in the profits of the business *and submit to the burden of making good the losses*" (see, also, 32 NY Jur, Joint Adventures, § 6, p 279). On the facts contained in this record, whether a joint venture existed heavily depends upon resolution of questions of credibility and conflicting inferences. The trial court need not have credited the testimony of Ehrlich, an interested witness, that the two corporations completely commingled their funds and were treated as a single entity. Given that defendant had the burden of establishing its defense by a preponderance of the credible evidence, we cannot say that the trial court erred in concluding that no joint venture existed. A critical factor is that under the lease and the corporate infrastructure which the underlying individual parties in interest created, defendant's assets, valued by it at almost $3,000,000 after depreciation, were effectively insulated from any possible business losses arising out of the operation of the resort hotel, with the exception of some $160,000 in jointly executed corporate promissory notes. The individual principles in this business enterprise, for their own business and legal advantage, elected to operate that enterprise through separate corporate entities. The structure they created should not lightly be ignored at their behest, in order to shield one of the entities they created from third-party common-law tort liability. As stated by the court in rejecting a similar contention in *Boggs v Blue Diamond Coal Co.* (590 F2d 655, 662, cert den 444 US 836): "a business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee." *Felder v Old Falls Sanitation Co. (supra)*, relied upon by defendant, is distinguishable. There, the plaintiff was employed by one of three corporations jointly engaged in a single garbage removal business which was totally integrated horizontally. The respective corporate assets and employees of all were used completely interchangeably. Absent in *Felder* were the legal relationships of lessor and lessee, and of parent corporation and subsidiary, which governed the use of property here and removed defendant's assets from exposure to operational business losses. A reversal of Special Term's factual determination would thus entail either an extension of *Felder,* or the creation of a new entity theory of third-party immunity under section 11 of the Workers' Compensation Law. Neither basis is justified on the record before us, or by the policy underlying exclusivity of compensation benefits in tort claims for work-related injuries. As stated by a leading authority in the field of compensation law: "If there is no strong reason of compensation policy for destroying common-law rights as to various classes of third parties, then, every presumption should be on the side of preserving those rights, once basic compensation protection has been assured. The funda-

mental reasons for negligence liability are the same as they always were. The injured plaintiff has a right to be made whole — not just partly whole — and the more inadequate compensation recoveries appear, the more cogent becomes this argument" (2A Larson, Workmen's Compensation Law, § 72.50, p 14-95). We, therefore, decline to disturb Special Term's findings. Order affirmed, with costs. Mikoll, Yesawich, Jr., and Levine, JJ., concur.

Sweeney, J. P., and Kane, J., dissent and vote to reverse in the following memorandum by Sweeney, J. P. Sweeney, J. P. (dissenting). We are to reverse and grant summary judgment to defendant. In our view, an examination of the record, in its entirety, demonstrates that the corporations were a *single economic entity*. It is unnecessary, however, to determine whether there was a joint venture or a single entity since plaintiff, at the time of the accident, was employed by defendant and it had obtained workers' compensation covering all employees of Pines Hotel. Consequently, defendant was insulated by section 11 of the Workers' Compensation Law from plaintiff's action (see *O'Rourke v Long,* 41 NY2d 219).